United States v. Foreman United States v. United States v. United States v. Franklin does not change that inquiry and fits in with what we see from Adelanto-Gonzalez and Smith. Adelanto-Gonzalez' case in this court reversed and said there should have been a substitution of counsel. The court said targeted questions are essential and not just targeted questions regarding the nature of particular complaints the defendant may have about the effectiveness or tactic of decisions being made by the attorney, but targeted questions about communication and about has there been a breakdown in the relationship between the attorney and the client. Smith and Franklin together established that there still is a preference for this sort of targeted questioning. What do you mean by preference? I'm not quite sure what you're driving at by using preference. There's no ironclad rule that there shall be questions such as when you were alive. Absolutely. In Smith there were no questions. There was not even, and I should say in Smith there were two substitution of counsel motions for review, and I'm talking about the second one, the post-trial motion. There was no inquiry on the record made by the judge in this court. I don't know what tantalizes me about this case, and that is that you tell us that there was a complete breakdown in communications between the client and counsel, and there clearly was trouble, and that was approved by the trial court. But then later on your client pleaded guilty, and when he did, in writing he signed a document. Do you know what the document said? I'm satisfied with my lawyer's representation. And then he said the same thing orally when the plea went down, and I'm tantalized by that. I mean, you're telling me there was a complete breakdown, and then all of a sudden you have your client saying I'm happy with my lawyer, and then when you plead the judge went through the whole business of deciding that it's completely voluntary. The judge told your client you don't have to plead guilty if you don't want to. So what do we do with all of that? That's a bit of a curveball in this case that you're not usually going to find. I think that's right. And why don't we even have jurisdiction to review this? Jurisdiction because there's no – I mean, this is sort of a follow-up to the last question. Why isn't whatever happened, whatever unhappiness may have happened there, washed out by the guilty plea? He pleaded, he entered in an unconditional, unchallenged guilty plea, a voluntary guilty plea. Why doesn't everything that happened before get washed out? There probably isn't even the jurisdiction to look at it. Because the inquiry that the court makes in reviewing denial of substitution of counsel conflates essentially with the finding of whether that guilty plea was properly entered. You have a defendant – But you haven't challenged the voluntariness of the guilty plea. So if you haven't challenged the voluntariness of the guilty plea, the guilty plea is voluntary. It's an established fact, a law of the case. So isn't this like a suppression motion? You file a suppression motion. You lose a suppression motion. You don't preserve it for appeal. Let me say, your client takes a plea, doesn't preserve it. It's not a conditional plea. We can't look behind that. I'm not quite sure why the curtain has fallen. How do we get behind it? Substitution of counsel, I think, is qualitatively different than, say, a suppression motion. What case goes to suggest that that's the case? They're both constitutional. There's no case that I've found that's directly addressing the question. The principle is that once you enter a voluntary plea, then it wipes out all pre-existing constitutional complaints. Go ahead. The one case I would rely on is the Law and Laws of Gonzales case. That is the case exactly in this posture. The court didn't discuss that question. I don't know whether the government didn't raise it or not. So it's not a holding procedure? It's not a holding. But this court does, if it is a jurisdictional question, has an obligation to sue its body, determine whether it has jurisdiction. Presumably that was done in that case. It's not, obviously not as binding and controlling as it would be had the court laid out its analysis and said, we have jurisdiction. But going back to the question. It's sort of binding. It's like going to war. There's not a little bit about it. It's either binding or it's not. If you read that case as holding jurisdiction, then we can look at it as how to reconcile it with all of our other cases. Once you enter a voluntary duty plea, you can challenge the voluntariness. You can get the review of any issues that you preserve. You could call it a conditional plea, as you know. But everything else is wiped out. Well, I urge the court to take a look at our laws and its analysis. In this posture, the court says it does not address the question, but would have had to, to address the merits of it. If it was aware of the jurisdictional question. That's correct. On another level, it seems to me that the advice which the lawyer gave was correct. Is that not right? We're not, at this point, at the age with the legal advice in terms of the questions of the guideline calculations and the suppression of the wiretap or the wire that was worn. Don't go back to where I was a few minutes ago. Let me get into the fact that in writing, if you brush it aside as boilerplate and formulaic, those are two interesting labels, but the facts still remain that your client, in writing and orally, said, I'm satisfied with my lawyer's representation. Right. Three days after his motion, three days over a weekend, including the weekend after he had heard his motion, that the district court was correct, that there was simply a scramble about whether this so-called wiretap evidence was admissible and how to calculate a guideline sentence, that this was a tactical thing and there really wasn't a breakdown in communication, that there was just a difference in ideas about how the case ought to proceed. What happened on the day of the guilty plea was not before the court, before the district court, when it was ruling on the motion for substitution of counsel. That happened later, and it's not part of the landscape. Yeah, I know, but it's part of the entire landscape. You're hearing a appeal saying my client's got a raw deal down there, but here you've got the client saying I'm happy with his lawyer. What do we do with that? Well, it's... Are we required to ignore that because it happened a couple of days later? That's not a rhetorical question. No, that's the point I'm making. It's not on the record before the judge, when the judge is making the ruling. So what do you do after the inquiry is out of bounds? In terms of reviewing the motion for substitution of counsel, yes. Do you have any cases or what principle would you rely on? Essentially the principle that if you're reviewing, the general principle that you're reviewing a decision of the court, you would be looking at something that the district court didn't have before it when it was making that decision. Counsel, do you want to talk about the restitution issue? Very briefly make the point that this is... The language of the statute is very plain. It tells the district court you've got multiple defendants, you've got a choice. You're either going to make each defendant liable for payment to the full amount or you apportion liability. This district court did both. It apportioned liability for DaCosta and it ordered full joint and several liability for my client. Why didn't that just apportion? Because the statute doesn't permit the judge to do that. The statute gives a choice. You either apportion for the defendants, for all the defendants, or you make each defendant liable. So the definition of apportion means it has to be less than the total amount. That's correct. And the... In fact, looking at the record in DaCosta's case, we have a sentencing transcript in the record. It's ER 73. Looking at DaCosta's sentencing hearing, that is actually what the judge was planning to do. She says, under the circumstances, the court feels it is appropriate, pursuant to Title 18, Section 664, sub H, to apportion liability for the contribution to the victim's loss amongst those three defendants. My client wasn't at the hearing. His attorney wasn't at the hearing. The government, of course, was, and the district court was. But when it came time for imposition of the joint and several liability for my client, that information was not made part of the record, and that's where it stood.  when those decisions were made at DaCosta's proceedings. He was denied counsel at DaCosta's proceedings. Granted that's an unusual argument, but a decision was made at that hearing that would affect his rights, and he wasn't present for that. Let me draw back to the first issue. What are you asking us to do? What do you want us to do with your client's case? At this point, the court can only remand it for a hearing for further inquiry on the adequacy of, for a decision on whether or not there was a breakdown in the relationship between attorney and client. There was no decision on that. And if we were to remand it for a continuation of the hearing, whether there was a breakdown in communication, the trial court cannot consider the later developments that the client said, I'm happy with the lawyer's representation? Well, I think the court has to consider what was happening on April, or on August 7th, I believe is the date, and what was... And if the court should conclude in your favor that there was a breakdown, what happens then? Then the guilty plea would be vacated. And what happens then? And he proceeds anew with new counsel. To what? Whatever that, as if this court... What's the end game? We're looking at 46 months, and we've got 41. So you say he wants to try for 46 now? He may go to trial. We may offer him a new deal. He's got to turn down the deal. You're not going to get a new deal. You know that. He could get an upward departure. The PSR says he qualifies for an upward departure because his criminal history is underrepresented in the point. Your client may be walking into a higher sentence. He pled guilty with no plea. Straight up? Yes. There was no protections. And there's no reason to think he'd be doing anything worse. And there is a presumption that a higher sentence would be vindictive in that situation. But it might not be. It might not be. That's correct. Is your client aware that he may get a worse sentence by going back to the starting over? He's aware. Okay. We'll hear from the government. Good afternoon, Your Honor. John Heumann for the United States. I'd like to start with the jurisdictional point. I think what the defense of the appellant is asking this court to do is to set up a per se rule that when there is a motion for substitution of counsel that anything that comes after that, including a guilty plea, is not necessarily voluntary. And what the law is, and it's very clear, that a guilty plea breaks the chain. And anything that happens before it is waived except for a claim, which the defendant is not making, that he received ineffective assistance with respect to the guilty plea. The defendant is saying, that's true, except when I merely move to substitute counsel. Because the motion then raises the issue of whether the court erroneously denies the motion. What is going to follow is the argument that everything that follows from an erroneous denial of a motion to substitute counsel is not every decision that is made by the defendant is not knowing and intelligent, including, as in this case, the guilty plea. Could he have entered a conditional plea of guilty and preserved this issue? He, well, in the absence of a plea agreement, I'm not sure that he could have entered a conditional plea of guilty and preserved this issue. It certainly wasn't raised in the district court. Counsel, isn't a claim of incompetence of counsel very close to a claim of incapacity to communicate effectively with counsel? I think, Your Honor, if there had been a claim of incompetence of counsel, that would be something that would be important to discuss. But that's not my question. Is a claim of incapacity of counsel or incompetence of counsel... Incapacity of the client to communicate effectively with his counsel very much like a claim of incompetence of counsel. I think that claim is consistent with incompetence of counsel. And that claim is what would have triggered an obligation on the part of the district court to inquire as to the communication. If the defendant had walked into court and said, Your Honor, I've got this complaint that I want to raise with you. He'd written a letter that's in the excerpts of records that actually lays out exactly what his complaint is. If he had said, Your Honor, I can't talk to my lawyer, like the lawyer or the defendant in Adelzo Gonzalez, or like the defendant in the Walker case. I simply can't talk to him. He doesn't understand me. I don't understand what he's talking about. Then the district court has to explore that particular complaint. When the defendant comes into court and says, as he did in this case, Your Honor, I disagree with my lawyer. And I don't think that he's doing what I think he should be doing. That obligates the district court to do something different, and that's why this case is like the Franklin case. In Franklin, the client came in and said, I disagree with my lawyer. He's doing things that I don't think he should be doing. And so the district court explored the conflict. There's the three-part test that is recited in almost all the cases. One is the request for substitution timely. Two, did the court adequately inquire into the conflict? And three, did the inquiry reveal a total breakdown in communication? We're on number two in this case, the adequacy of the inquiry. And it doesn't say, none of the cases say, did the district court adequately inquire into the communications breakdown? Because that presupposes a communications breakdown. What the cases say is, did the district court adequately inquire into the conflict? And in this case, the record is absolutely clear that the district court did. Unlike the district court in the Smith case, unlike the district court in the Walker case, and unlike the district court in Adelzo Gonzales, Judge Chesney said, look, I hear what you're saying to me. And you're saying, A, that he should move to suppress the wiretap, and B, that the government is giving you a bad deal on the guidelines calculation. Let's talk about that. And they did talk about it. And as Judge Trott pointed out, the defendant may have been satisfied three or four days later when the guilty plea came around, because Judge Chesney did actually inquire into what his complaint was. I'm a little confused. I thought you were talking about the jurisdictional question. Are you now saying we can look at all of that to determine the jurisdictional question? No, Your Honor. You just have to stop talking about the jurisdictional question. At some point. In perhaps a hand-handed attempt to answer Judge Fletcher's question, I think bled into the... Well, it's basically my question was jurisdictional, that there were enough alike that we could look at it. If there is evidence at the time of the plea colloquy that counsel is not communicating and the defendant does not understand fully what he is doing in pleading guilty, then the court... I think it was your position that to do that, he has to challenge the voluntariness of the waiver, of the plea agreement, to even get into it. Let's say the lawyer was standing there like a part of the plan, said nothing, helped nothing, did nothing. I thought your position was if you don't challenge the voluntariness of the plea, you can't get into it at all. That is the government's position. And the focus of this court... I would have thought that would have been your answer to Judge Fletcher's question. It doesn't matter whether he was above statute, since he hasn't challenged the voluntariness of the plea. Too bad. I don't know. You can answer Judge Fletcher's question any way you want to, but it got me all confused as to why we're getting into lots of bulls. I may have misunderstood the question, Your Honor, and I may have not answered it correctly. The answer to Judge Fletcher's question is that the defendant on appeal does not challenge the voluntariness of the plea, and this court does not find that the plea was involuntary. This court does not have jurisdiction to consider antecedents. It's the and part that worries me, because how do we get into finding whether it was voluntary or not without doing exactly what you said we can't do? Because you focus on the plea, probably, rather than on the antecedent ruling. And whether there's a hypothetical plea... But he hasn't challenged the voluntariness of the plea. How do we get into looking at that? Well, that's the step that's missing in this case. Step one is that there must be a challenge to the voluntariness of the plea. And the and is... And if we fall off that, it's gone. It's gone. It's gone. It's gone. And there's no, certainly, argument supported by the record in this case that the plea colloquy... that the plea was not revealed during the colloquy to be voluntary. There was no indication. The defendant would have had to have been lying to Judge Chesney, outright lying. Defend? The defendant lied to the court? It's shocking. Unheard of. Why would you suggest that? To answer Judge Chesney unequivocally yes over and over and over again when she asked during the plea colloquy, as she was required to do. Well, but you know how plea colloquies go. The guy wants his plea for whatever reason, and he's going to answer yes to whatever the judge asks. That's the way it works. You know that if you don't answer the right questions, you're not going to get what you want. I've been through some plea colloquies where it doesn't quite go as smoothly as that, Your Honor. Yeah, but what happens is everybody starts the show and says, wait a minute, and then the lawyer takes the client to one side and meets him up good. You better answer, you know. And then he comes back and says, oh, no, I just have a specific question and I'll answer it, of course. Yes, absolutely. That's right, Your Honor, and that does happen, and that might, in the right case, raise some red flags for this court. But this case has none of that. This case, the transcript is clear, the questions are clear. The lawyer did a good job of beating up the client before. You better answer all those questions he asks. Interestingly, I think that the colloquy that's in the excerpt, the record reveals that there was very much a dialogue between Judge Chesney and the defendant that was not overly influenced by the defense lawyer, and Judge Chesney was very concerned, and the record bears this out, that the defendant knew that he was under no obligation. And in the case where there's a plea agreement, the defendant might really want the deal. Then you might see a little bit of sliding. But in a case like this where he's pleading open, there was no sliding at all. The defendant didn't know what deal he was going to get. He didn't have to make something up in order to get what he thought was a good deal. I read from the record that there was an offer of a deal. There was an offer of a deal. What was he offered? He was offered a, my recollection, Your Honor, it's not in the record as to what the offer was. He was offered, I think, a low-end sentence in addition to a different calculation of the total loss. And he didn't accept it. And he did not accept it. So he took that off the table. And that was taken off the table, yes. So then he had to plead pretty much straight up without any prompts. This all happened within about two weeks of the trial. My time is up. Let me finish your question. This happened about two, this ended a period of two weeks before the trial. There was an offer. The deadline was before the pretrial conference. The pretrial conference happened, and the defendant refused to accept the offer. It was at the pretrial conference that this issue of substitution of counsel came up. There was the in-camera hearing. The trial was set to start, I think, the next Monday after the pretrial, the Wednesday pretrial conference. And by that time, the government was obviously hard at work, you know, getting witnesses flown in and things like that. The offer was taken off. And then you will see in the record that the defense lawyer ran into Judge Chesney on the street outside the federal building and told her that there would be a change of plea on Monday rather than a trial. And that's how it transpired. I thought that I'd like you to take just a moment on the restitution. There are things that we may have to send it back for you to send it in right now. I disagree, Your Honor. And the primary reason that I disagree is that there was no objection to the restitution order in the district court. And the defendant's position is, how could I object? I wasn't at the DaCosta sentencing. And there are a couple of answers to that question, a couple of observations about that. First of all, no case suggests that a co-defendant has the right to be present in other co-defendants' sentencing for the purpose of arguing about restitution. One of the cases that the defendant cites is a Tenth Circuit case called Spears, S-P-E-A-R-S. Spears says, if something's going to happen in the co-defendant's sentencing that is going to impact the defendant's sentencing, the defendant has the right to be there unless the defendant has the opportunity to make the same arguments and present the same evidence at his own sentencing. In other words, the district court can't sentence another defendant, pick up whole hog the transcript, the record of that sentencing, force it on the current defendant without that defendant being able to reopen. We're talking about DaCosta's sentencing? Yes, Your Honor. And when did the judge make the decision to give a lesser portion of restitution to DaCosta and a larger portion to the district court? The record is somewhat confusing on this. That's why I asked. In part, the DaCosta sentencing preceded the defendant by several months. At that time, the probation officer calculated the restitution obligation, the total restitution obligation to be $120,000. At that sentence, or at that time, Judge Echesne said, I think that this defendant is clearly the least culpable of co-operating. He's co-operating. And ironically, he's the one of the three that actually has money to contribute on a regular basis. He'll be paying the others more. Exactly. So Judge Echesne says, I'm going to give him a third of it. I'm going to reduce it by the $26,000 that he's already repaid, so he has $14,000. We fast forward several months. Does she say anything about it? No. She does say there are three defendants. Right. I'm going to divide it by three and make DaCosta pay $40,000. But she doesn't talk about specifically what she's going to order either Foreman or Okanubi, the third defendant, to pay. We then go forward to the Foreman case. There is more talk about restitution, and there's an evidentiary hearing. At that point in time, the actual number of checks are calculated. It comes out to be $112,000. Judge Echesne decides, applying a clear and convincing evidence standard to the loss calculation, to hold the Foreman responsible only for the six checks that he personally admitted, which came out to be $90,000. Then she credits Foreman the $28,000 that DaCosta had already paid. She reduces it by what the victims had already been paid back, giving him credit that he didn't ask for. There's no objection. Everybody's on their way out. And the clerk does make an off-tag comment saying, well, should this be joined separately or not? Judge Echesne sort of says, well, if the defendant's not represented, you can't really talk about it. I'm really confusing them because she has relieved Beckwith as his lawyer. So he's standing there right now unrepresented. Sure. But the essential point with regard to that is, at that point there's only two choices. Should the set be unobjected to $72,000, be solely paid by Foreman, or should it be jointly and separately shared by the two other defendants? Nobody would say, no lawyer, if you sent this back, it would go back. We'd stand up in front of Judge Echesne. Judge Echesne would say to the lawyer, would you prefer that Mr. Foreman pay the entire $72,000 or that the payments that the cost is continuing to make are credited against him? Can I ask a question that really doesn't have much to do with anything? You're never going to see a cent from Foreman, are you? No. Then why were you fighting over restitution from Foreman? We were not fighting over it, Your Honor. It happened at Judge Echesne realized that she had to, under the Mandatory Victim Restitution Act. So the law required her to do it even though he was going to be spending the rest of her all time in other prisons, including the federal prisons, and he has no money at all? That's correct. So this is really just a sort of hypothetical case? It's an unlicensed place. Yes, I mean, Mr. Foreman is illegally in the country, and what's going to happen to him is he will be transferred when he leaves via peak custody to the INS and deported to Jamaica. So if we send this back for a further restitution hearing, are you just going to give up and say, get him out of here? It depends on what the court's order is. We'll follow the court's order if the court sends it back. There's an unreality to this whole fight over restitution. There is an unreality, I agree, Your Honor. Okay. Thank you very much. Case is filed. You will stand submitted.
judges: B. Fletcher, Kozinski, Trott